E-FILED
Monday, 14 August, 2017  11:21:44 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

STEVEN PODKULSKI,

        Plaintiff,

        vs.

STU INMAN, BILL COX, SHERRY
MARTIN, KYLE FEVER, TONY
CHILDRESS, JAMES PULLIAM,
ADVANCED CORRECTIONAL
HEALTHCARE, INC., and LIVINGSTON
COUNTY, ILLINOIS,

        Defendants.

Case No. 1:16-cv-01173-CSB

Honorable Judge Colin S. Bruce

**JURY TRIAL DEMANDED**

### AMENDED COMPLAINT

Plaintiff Steven Podkulski ("Plaintiff" or "Podkulski"), by and through his attorneys, brings his Amended Complaint ("Complaint") against Defendants Stu Inman, Bill Cox, Sherry Martin, Kyle Fever, Tony Childress, and James Pulliam in their individual capacities; and Livingston County, Illinois and Advanced Correctional Healthcare, Inc.  In support of his Complaint, Podkulski states as follows:

### INTRODUCTION

1.      Podkulski is an Illinois resident who is currently incarcerated at the Cook County Jail in Chicago, Illinois.

2.      Podkulski brings this action under 42 U.S.C. Section 1983 and Illinois state law for compensatory and punitive damages, due to injuries that he suffered as a result of being the victim of sexual assault on two occasions while he was incarcerated at the Livingston County Jail.

3.      The Defendants could have prevented those sexual assaults and/or mitigated the

ongoing psychological issues that Podkulski suffers as a result of those assaults.  Instead, they either did nothing to protect him, or aggravated the threat to Podkulski.  In so doing, Defendants manifested deliberate indifference to Podkulski's physical safety and serious medical needs.

## JURISDICTION

4.      This action is brought pursuant to 42 U.S.C. § 1983 and Illinois state law. This Court has jurisdiction over Plaintiff's federal causes of action pursuant to 28 U.S.C. §§ 1331 and 1343(a), and this Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the claims occurred in the Central District of Illinois.

## PARTIES

6.      Podkulski is, and has been at all times relevant to this Complaint, a citizen of the United States and a resident of the State of Illinois.  Podkulski was incarcerated at the Cook County Jail from on or about October 23, 2014, to on or about December 11, 2015; and at the Livingston County Jail from on or about December 11, 2015, to on or about March 16, 2016. Podkulski is physically handicapped as a result of injuries and illnesses unrelated to the events described in this Complaint.  Because of his handicaps, Podkulski wore adult diapers and used a cane for mobility at all times relevant to this Complaint.

7.      On information and belief, Defendant Tony Childress ("Childress") is, and at all times relevant to this Complaint has been, the Sheriff of Livingston County, Illinois.   On information and belief, Childress conducts business in the State of Illinois.

8.      On information and belief, Defendant Bill Cox ("Cox") is, and at all times relevant to this Complaint has been, employed by Livingston County, Illinois, as the

Superintendent of the Livingston County Jail.  On information and belief, Cox conducts business in the State of Illinois.

9.      On information and belief, Defendant Stu Inman ("Inman") is, and at all times relevant to this Complaint has been, employed by Livingston County, Illinois, as the Assistant Superintendent of the Livingston County Jail.  On information and belief, Inman conducts business in the State of Illinois.

10.      On information and belief, Defendant Sherry Martin ("Martin") is, and at all times relevant to this Complaint has been, employed by Livingston County as a correctional officer at the Livingston County Jail.  On information and belief, Martin conducts business in the State of Illinois.

11.      On information and belief, Defendant Kyle Fever ("Fever") is, and at all times relevant to this Complaint has been, employed by Livingston County as a correctional officer at the Livingston County Jail.  On information and belief, Fever conducts business in the State of Illinois.

12.      On information and belief, Defendant James Pulliam ("Pulliam") is, and at all times relevant to this Complaint has been, employed by Advanced Correctional Healthcare, Inc. as a licensed practical nurse charged with providing medical care for inmates at the Livingston County Jail. On information and belief, Pulliam is licensed by and conducts business in the State of Illinois.

13.      On information and belief, Defendant Advanced Correctional Healthcare, Inc. ("ACH") is a corporation duly incorporated under the laws of the State of Illinois, with its principal place of business in Illinois.  ACH is registered and authorized to do business in the State of Illinois.  On information and belief, ACH contracts with Defendant Livingston County

-3-

for the provision of  health care services to the inmates in the custody of the Livingston County

Jail.  On information and belief, Defendant Pulliam is, and at all times relevant to this Complaint

has been, an employee of ACH.

14.     On information and belief, Defendant Livingston County is a unit of local

government and the employer of Defendants Childress, Cox, Inman, Martin, and Fever.  On

information and belief, Livingston County contracts with Defendant ACH for the provision of

health care services to the inmates in the custody of the Livingston County Jail.

## FACTUAL BACKGROUND

15.     On or about December 11, 2015, Podkulski, who had been incarcerated at the

Cook County Jail, was transferred to the Livingston County Jail in Pontiac, Illinois, as part of

Cook County's policy of housing some of its inmates in the jails of neighboring counties.

Plaintiff was placed into the Livingston County Jail's H Unit, which he shared with

approximately nine other inmates.

16.     In March 2016, another inmate, whose name, on information and belief, is

Rodney Cortz Jones ("Jones"), made threats of physical and sexual violence toward Podkulski.

On or about March 3, 2016, and again on or about March 11, 2016, Podkulski filed grievances in

which he reported that he felt threatened by Jones and asked that Jones be removed from H Unit.

17.     Defendant Fever spoke with Podkulski about his grievances.   During that

conversation, Fever told Podkulski that the only help he would provide in response to

Podkulski's complaints would be to place Podkulski into segregation.  Because Podkulski had

not done anything wrong, and because his medical issues—including his need for adult diapers—

required that he have access to a handicapped shower and other amenities that were not available

in segregation, Podkulski responded that he did not want to be moved.  On information and

-4-

belief, Fever did not remove Jones from H Unit or take any other action to protect Podkulski.

***The Sexual Assaults***

18.     Podkulski was forcibly awakened at approximately 4 a.m. on the morning of March 12, 2016, by Jones, who had Podkulski's cane pressed against his throat.  Jones told Podkulski to go into the nearby bathroom on the dorm, or Jones would kill him.  Fearing for his life, Podkulski complied and went into the bathroom.  Jones then pushed Podkulski over the toilet, pulled down Podkulski's pants and diaper, and proceeded to rape Podkulski by anal penetration.  Jones then left Podkulski.  Nathan Nicholson, another inmate, was awake and witnessed the assault.

19.     That same day, Podkulski filed two grievances related to the rape.  In the first grievance, he wrote that he needed a contact number to which he could report a physical assault under the Prison Rape Elimination Act, 42 U.S.C. §  147 ("PREA"), and that it was wrong for the Jail to leave Jones on the same unit with him.  In the second grievance – which he labeled an "EMERGENCY GRIEVANCE" – Podkulski described what had happened that morning and again asked that Jones be removed from the unit.

20.     During the afternoon on March 12, 2016, the inmates on H Unit were gathered in the gymnasium.  Podkulski and one other inmate did not attend.  On information and belief, Defendant Martin assembled the other inmates in the gymnasium, where she informed them that Podkulski said that he had been raped, and she then purportedly interviewed those gathered about it.  Martin approached Podkulski after the gym gathering and told him that she thought his allegations were false.  However, she allowed him to call the PREA hotline, but the first phone Podkulski used rang to a number that did not work.  Martin allowed Podkulski to use another phone in the jail, but with the same result.   Martin offered no other help to Podkulski, did not

alert the Jail's medical staff about Podkulski's allegations so that a rape kit could be performed, and did not take any action to remove Jones from H Unit.

21.     When the other H Unit inmates returned from the gymnasium, many were laughing at what Martin had told them about Podkulski's reported rape.  Nicholson told Podkulski that Jones was angry that Podkulski had reported the rape.

22.     At approximately 4 a.m. on March 13, 2016, Jones raped Podkulski a second time.  This second rape was similar in nature to the first.

23.     On or about March 14, 2016, Podkulski told Defendant Pulliam, a nurse at the Jail, that he had been raped twice in the preceding days.  Pulliam did not offer any medical assistance.  Instead, Pulliam told Podkulski that he should file a grievance and talk to the Jail's superintendent because the rapes were none of his concern.  On information and belief, Pulliam did not order or conduct a rape kit, alert any other staff, or take any other steps to respond to the rapes or protect Podkulski from further assault.

24.     Also on or about March 14, 2016, Podkulski filed a grievance in which he reported Officer Martin's actions on or about March 12, 2016, and the Jail's failure to have a PREA-compliant phone system.

### *The Failure of Livingston County and Its Executives to Enact PREA Procedures*

25.     Livingston County was responsible for effectuating policies and procedures that would ensure that Livingston County Jail was in compliance with the PREA and that the employees of Livingston County Jail were trained to take adequate measures to prevent rape and respond to allegations of rape.

26.     Childress, as the Sheriff of Livingston County, was responsible for effectuating policies and procedures that would ensure that Livingston County Jail was in compliance with

the PREA and that the employees of Livingston County Jail were trained to take adequate measures to prevent rape and to respond to allegations of rape.

27.     Cox, as the Superintendent of Livingston County Jail, was responsible for effectuating policies and procedures that would ensure that Livingston County Jail was in compliance with the PREA and that the employees of Livingston County Jail were trained to take adequate measures to prevent rape and respond to allegations of rape.

28.     Inman, as the Assistant Superintendent of Livingston County Jail, was responsible for effectuating policies and procedures that would ensure that Livingston County Jail was in compliance with the PREA and that the employees of Livingston County Jail were trained to take adequate measures to prevent rape and to respond to allegations of rape.

29.     Instead, Livingston County, Childress, Cox, and Inman each failed to implement PREA compliance policies and ensure that the correctional and medical staff of Livingston County Jail were adequately trained to prevent rape and to respond to allegations of rape.  These deficiencies are evidenced by the woefully inadequate responses that Defendants Fever, Martin, and Pulliam made to Podkulski's reports of the threats of sexual violence made toward him and his reports of the two instances when Jones raped him.

***Podkulski's Injuries***

30.     As a result of Defendants' repeated failures to protect him, Podkulski has suffered numerous serious and preventable injuries.  Podkulski was twice the victim of rape as a result of Defendants' failures to listen to and credit his repeated reports of the threats Jones made toward him.  As a result of being raped, Plaintiff has suffered from anal bleeding, a general fear of being in his cell with another person, and a desire to self harm, as well as aggravated post traumatic stress disorder, depression, panic disorder, and anxiety.

## COUNT I

**Violation of 42 U.S.C. § 1983: Cruel and Unusual Punishment
Failure to Protect from Attack
[Defendant Fever]**

31.     Each of the allegations of paragraphs 1 though 30 is incorporated herein by reference.

32.     As an inmate in the custody of Livingston County Jail, Podkulski had a right under the Eighth Amendment and Fourteenth Amendments to the United States Constitution to be protected from other inmates who presented substantial threats to his safety.

33.     As a result of Podkulski's repeated reports of the threats that Jones made toward him, Defendant Fever knew about the substantial risk to Podkulski's safety, yet he consciously disregarded that risk.

34.     In failing to protect Podkulski from being raped by another inmate, Defendant Fever was deliberately indifferent to the substantial risk that Podkulski would suffer serious injury.  Defendant Fever's failure to respond to Podkulski's complaints about the threats Jones made against him constituted cruel and unusual punishment in violation of the Eighth Amendment and Fourteenth Amendments.

35.     The rights that Podkulski alleges that Defendant Fever violated are clearly established statutory and/or constitutional rights of which a reasonable person would have been aware.

36.     As a direct and/or proximate result of Defendant Fever's deprivation of Podkulski's Eighth and Fourteenth Amendment rights, Podkulski suffered harm, and therefore is entitled to compensatory and punitive damages under 42 U.S.C. § 1983.

## COUNT II

**Violation of 42 U.S.C. § 1983: Cruel and Unusual Punishment**
**Failure to Protect from Attack**
**[Defendant Martin]**

37.     Each of the allegations of paragraphs 1 though 36 is incorporated herein by reference.

38.     As an inmate in the custody of Livingston County Jail, Podkulski had a right under the Eighth Amendment and Fourteenth Amendments to the United States Constitution to be protected from other inmates who presented substantial threats to his safety.

39.     As a result of Podkulski's reports of the threats that Jones made toward him and his report of the first rape he suffered on or about March 11, 2016, Defendant Martin knew about the substantial risk to Podkulski's safety, yet she consciously disregarded that risk.  In fact, by sharing his allegations with the other inmates in H Unit, Defendant Martin exacerbated the risk to Podkulski's safety.

40.     In failing to take action to protect Podkulski when he reported the first rape, Defendant Martin was deliberately indifferent to the substantial risk that Podkulski would suffer serious injury from a second assault.  Defendant Martin's failure to respond to Podkulski's report of the first rape constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.

41.     The rights Plaintiff alleges that Defendant Martin violated are clearly established statutory and/or constitutional rights of which a reasonable person would have been aware.

42.     As a direct and/or proximate result of Defendant Martin's deprivation of Podkulski's Eighth and Fourteenth Amendment rights, Podkulski suffered harm, and therefore is entitled to compensatory and punitive damages under 42 U.S.C. § 1983.

## COUNT III

### Violation of 42 U.S.C. § 1983: Cruel and Unusual Punishment
### Deliberate Indifference to Serious Medical Need
### [Defendant Martin]

43.     Each of the allegations of paragraphs 1 through 42 is incorporated herein by reference.

44.     As an inmate in the custody of Livingston County Jail, Podkulski had a right to adequate medical care under the Eighth Amendment and Fourteenth Amendments to the United States Constitution.

45.     Rape is an injury that is objectively serious enough that the failure to provide the care that Podkulski needed constituted a deprivation of his constitutional rights.

46.      Defendant Martin deprived Podkulski of access to adequate medical care in violation of his constitutional rights by failing to report to the Jail's health care staff that Podkulski had been raped and by failing to ensure that Podkulski received the medical care that he needed as a result of being raped.

47.     Defendant Martin deprived Podkulski of timely access to medical care, which was necessary to address the injuries that Podkulski suffered as a result of being raped. Podkulski has suffered unnecessary injury as a result of not receiving such medical care, including suffering from a desire to engage in self-harming behavior and aggravated post-traumatic stress disorder.

48.     Defendant Martin knew or reasonably should have known that Jones's acts of rape presented a substantial risk of serious harm to Podkulski's health.

49.     As a direct and/or proximate result of Defendant Martin's deprivation of Podkulski's Eighth and Fourteenth Amendment rights, Podkulski suffered harm, and therefore is entitled to compensatory and punitive damages under 42 U.S.C. § 1983.

-10-

## COUNT IV

### Violation of 42 U.S.C. § 1983: Cruel and Unusual Punishment
### Deliberate Indifference to Serious Medical Need
### [Defendants ACH and Pulliam]

50.     Each of the allegations of paragraphs 1 through 49 is incorporated herein by reference.

51.     As an inmate in the custody of Livingston County Jail, Podkulski had a right to adequate medical care under the Eighth Amendment and Fourteenth Amendments to the United States Constitution.

52.     Rape is an injury that is objectively serious enough that the failure to provide the care that Podkulski needed constituted a deprivation of his constitutional rights.

53.     Pulliam deprived Podkulski of access to adequate medical care in violation of his constitutional rights by essentially ignoring Podkulski's report that he had been raped.

54.     Pulliam deprived Podkulski of timely access to medical care, which was necessary to address the injuries that Podkulski suffered as a result of being raped.  Podkulski has suffered unnecessary injury as a result of not receiving such medical care, including suffering from post-traumatic stress disorder and a desire to engage in self-harming behavior.

55.     Defendant Pulliam knew or reasonably should have known that Jones's acts of rape presented a substantial risk of serious harm to Podkulski's health.

56.     Plaintiff specifically joins Defendant ACH to this count under a theory of respondeat superior liability. In doing so, Plaintiff seeks a good faith change in the law as discussed in *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782 (7th Cir. 2014), and *Perez v. Fenoglio*, 792 F.3d 768, 780 n.5 (7th Cir. 2015), and does not bring this count for the purposes of

harassment.

57.     As a direct and/or proximate result of Defendant Pulliam and ACH's deprivation of Podkulski's Eighth and Fourteenth Amendment rights, Podkulski suffered harm, and therefore is entitled to compensatory and punitive damages under 42 U.S.C. § 1983.

**COUNT V**

**Violation of 42 U.S.C. § 1983: Cruel and Unusual Punishment**
**Failure to Train**
**[Defendants Childress, Cox, and Inman]**

58.     Each of the allegations of paragraphs 1 through 57 is incorporated herein by reference.

59.     As an inmate in the custody of Livingston County Jail, Podkulski had a right, under the Eighth Amendment and Fourteenth Amendments to the United States Constitution, to adequate medical care and to be protected from other inmates who presented substantial threats to his safety.

60.     The rights that Plaintiff alleges Defendants Childress, Cox, and Inman violated are clearly established statutory and/or constitutional rights of which a reasonable person would have been aware.  Furthermore, rape is an injury that is objectively serious enough that the failure to provide the care that Podkulski needed constituted a deprivation of his constitutional rights.

61.     On information and belief, the training policies, procedures, and customs that Defendants Childress, Cox, and Inman enacted at the Livingston County Jail were inadequate to train its employees to carry out their duties.  Specifically, Defendants Childress, Cox, and Inman failed to adequately train the Jail's employees to adequately respond to allegations of rape, even though the need to train the Jail's employees to adequately respond to instances and allegations

of rape was obvious.

62.    Furthermore, at all times relevant to this Complaint, Defendants Childress, Cox, and Inman had actual or constructive knowledge of these deficiencies and consciously disregarded and were deliberately indifferent to the known or obvious consequences that would result therefrom.

63.    The failure by Defendants Childress, Cox, and Inman to adequately train the Jail's employees amounted to deliberate indifference to the fact that inaction would result in the violation of inmates' Eighth and Fourteenth Amendment rights.

64.    As a direct and proximate result of the deprivation of Plaintiff's Eighth Amendment and Fourteenth Amendment rights by Childress, Cox, and Inman, Plaintiff suffered harm, and therefore is entitled to compensatory and punitive damages under 42 U.S.C. § 1983.

<u>**COUNT VI**</u>

**Violation of 42 U.S.C. § 1983: Cruel and Unusual Punishment**
**Failure to Train**
**[Defendant ACH]**

65.    Each of the allegations of paragraphs 1 through 64 is incorporated herein by reference.

66.    As an inmate in the custody of the Livingston County Jail, Podkulski had a right, under the Eighth Amendment and Fourteenth Amendments to the United States Constitution, to adequate medical care.

67.    The rights that Podkulski alleges ACH violated are clearly established statutory and/or constitutional rights about which a reasonable person would have known.  Furthermore, rape is an injury that is objectively serious enough that the failure to provide the care that Podkulski needed constituted a deprivation of his constitutional rights.

-13-

68.     On information and belief, Defendant ACH's training policies, procedures, and customs were inadequate to train its employees to carry out their duties at Livingston County Jail.  Specifically, ACH failed to adequately train its employees to adequately respond to instances and allegations of rape, even though the need to train its employees who worked at Livingston County Jail to adequately respond to instances and allegations of rape was obvious.

69.     ACH's failure to adequately train its employees amounted to deliberate indifference to the fact that inaction would result in the violation of inmates' Eighth and Fourteenth Amendment rights.

70.     As a direct and proximate result of ACH's deprivation of Podkulski's Eighth and Fourteenth Amendment rights, Podkulski suffered harm, and therefore is entitled to compensatory and punitive damages under 42 U.S.C. § 1983.

## COUNT VII

**Violation of 42 U.S.C. § 1983: Cruel and Unusual Punishment
Failure to Train
[Livingston County]**

71.     Each of the allegations in paragraphs 1 through 70 is incorporated herein by reference.

72.     As an inmate in the custody of the Livingston County Jail, Podkulski had a right, under the Eighth and Fourteenth Amendments to the United States Constitution, to adequate medical care and to be protected from other inmates who presented substantial threats to his safety.

73.     The rights that Podkulski alleges Livingston County violated are clearly established statutory and/or constitutional rights about which a reasonable person would have known.  Furthermore, rape is an injury that is objectively serious enough that the failure to

-14-

provide the care that Podkulski needed constituted a deprivation of his constitutional rights.

74.    On information and belief, Livingston County's training policies, procedures, and customs were inadequate to train its employees to carry out their duties at Livingston County Jail effectively.  Livingston County failed to adequately train its employees to prevent rape and respond to allegations of rape, even though the need to train its employees who worked at Livingston County Jail to adequately respond to instances and allegations of rape was obvious.

75.    Livingston County's failure to adequately train its employees amounted to deliberate indifference to the fact that inaction would result in the violation of inmates' Eighth and Fourteenth Amendment rights.

76.    As a direct and proximate result of Livingston County's deprivation of Podkulski's Eighth and Fourteenth Amendment rights, Podkulski suffered harm, and therefore is entitled to compensatory and punitive damages under 42 U.S.C. § 1983.

## COUNT VIII

### State Law Claim for Intentional Infliction of Emotional Distress
### [Defendants Fever, Martin, and Pulliam]

77.    Each of the allegations of paragraphs 1 through 76 is incorporated herein by reference.

78.    The acts of Defendants Fever, Martin, and Pulliam as set forth above were both extreme and outrageous.

79.    Fever, Martin, and Pulliam intended to cause, and/or acted in reckless disregard of the probability that they would cause, severe emotional distress to Podkulski.

80.    The misconduct of Fever, Martin and Pulliam caused Podkulski severe emotional distress, including a desire to engage in self-harming behavior and aggravated post-traumatic stress disorder..

81.     The misconduct was undertaken with malice, willfulness, and/or reckless indifference to Podkulski's rights, as well as his emotional and mental health.

82.     As a direct and/or proximate result of the misconduct described above, Podkulski suffered serious emotional and mental injury and damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Steven Podkulski requests that this Court grant the following relief, jointly and severally against the named Defendants:

(a)     Declare that the policies, practices, and acts complained of are illegal and unconstitutional;

(d)     Award compensatory damages from all defendants, joint and severally, in an amount to be determined at trial;

(e)     Award punitive damages from all defendants, jointly and severally, in an amount to be determined at trial;

(f)     Award reasonable attorneys' fees, costs, and expenses, pursuant to 42 U.S.C. § 1988; and

(g)     Award other such relief as this Court deems appropriate.

Dated: August 14, 2017                     MAYER BROWN LLP


By:  s/ Marc R. Kadish
     Marc R. Kadish
     Lee N. Abrams
     Joseph M. Snapper
     Jerel D. Dawson
     71 South Wacker Drive
     Chicago, IL 60606
     Telephone: (312) 782-0600
     Facsimile: (312) 701-7711
     mkadish@mayerbrown.com
     labrams@mayerbrown.com
     jsnapper@mayerbrown.com
     jdawson@mayerbrown.com

     *Attorneys for Plaintiff Steven Podkulski*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| **STEVEN PODKULSKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 1:16-cv-01173-CSB** |
| **v.** | ) | |
| | ) | |
| **INMAN, et al.,** | ) | **Hon. Judge Colin Bruce** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of the filing and electronically serve it upon counsel of record.

Respectfully Submitted,

By:___s/ Marc R. Kadish___

-18-